Filed 12/12/14  In re J.T. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br>    Plaintiff and Respondent, <br><br>      v. <br><br> K.K., <br><br>    Defendant and Appellant. | G050282 <br><br> (Super. Ct. No. DP024018) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Caryl Lee, Judge.  Affirmed.  Request for judicial notice or to take additional evidence.  Denied.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

\*          \*          \*

# I. Introduction

K.K. (Mother) is the mother of J.T, who was taken into protective custody in July 2013 at the age of eight.  Mother appeals from the juvenile court's order under Welfare and Institutions Code section 366.26[1] terminating parental rights to J.T.  Mother argues the order terminating parental rights must be reversed because the juvenile court failed to comply with the Indian Child Welfare Act of 1978, 25 United States Code section 1901 et seq. (ICWA) with respect to J.T.'s father, D.T. (Father).  There is no dispute the juvenile court complied with ICWA as to Mother.  Father has not appealed.

We affirm.  We conclude any failure to comply with ICWA was harmless because substantial evidence supported a finding that Father denied any Indian ancestry.

# II. Facts and Procedural History

Because the appeal is limited to the issue of ICWA compliance as to Father, we present an abridged statement of facts and procedural history.

In July 2013, police officers took eight-year-old J.T. into protective custody after Mother reported she had been assaulted.  The officers observed that Mother was mentally disturbed or under the influence of drugs.  The officers learned that Mother had physically abused J.T. three days earlier.  Mother was arrested for child cruelty.  J.T., who had been living at various motels with Mother, had bug bites on his neck and arms.  He was placed with his maternal grandparents, with whom he remains.

On the day after J.T. was placed in protective custody, a social worker from the Orange County Social Services Agency (SSA) interviewed Mother.  During the interview, Mother denied having any American Indian ancestry.  The detention report, dated July 24, 2013, states:  "The [ICWA] does not apply.  On July 22, 2013 the mother

---

[1]  Further code references are to the Welfare and Institutions Code unless otherwise indicated.

informed Senior Social Worker Adame that child J[.T.] does not have American Indian Heritage."

On July 23, 2013, SSA filed a juvenile dependency petition alleging one count of failure to protect (§ 300, subd. (b)) and one count of no provision for support (§ 300, subd. (g)). The petition alleged Father, whose whereabouts were unknown, failed to provide for J.T.

The juvenile court ordered J.T. detained and ordered reunification services. On the day of the detention hearing, Mother completed a "Parental Notification of Indian Status" form (Judicial Council form ICWA-020), on which she checked the box next to "I have no Indian ancestry as far as I know." At the detention hearing, Mother's counsel stated that Mother had no Indian ancestry. Father did not appear at the hearing. Mother had had no contact with Father for several years and believed he was living in North Carolina.

The jurisdiction/disposition report, dated August 22, 2013, stated the juvenile court had not made an ICWA determination and that Father's whereabouts were still unknown. At the jurisdictional hearing on September 5, 2013, the juvenile court sustained the petition on both counts alleged. In response to a request from J.T.'s counsel, the juvenile court ordered Mother to undergo a psychiatric evaluation and a psychological evaluation to determine whether she would benefit from reunification services.

Over the next three months, however, Mother did not comply with the order for evaluations, nor did she undergo mandatory drug testing or therapeutic visitation with J.T. On December 18, 2013, the juvenile court ordered that J.T. be declared a dependent child of the juvenile court and set a hearing under section 366.26.

In January 2014, SSA filed a declaration of due diligence, stating that a search for Father had been unsuccessful. The juvenile court found SSA had exercised due diligence in its efforts to locate Father and provide him notice.

3

On April 2, 2014, senior social worker Stacey Metcalf brought an ex parte application to inform the court that, on March 25, Father had called to tell her that he had learned through Facebook that J.T. was in protective custody. Father informed Metcalf he was living in Durham, North Carolina. The juvenile court appointed counsel for Father.

In the section 366.26 report, dated April 17, 2014, SSA stated: "[F]ather has not availed himself to the [SSA] or the Court; therefore, a determination of paternity or . . . ICWA . . . status cannot be found at this time."

The section 366.26 hearing was conducted on April 17, May 7, and June 3 and 11, 2014. Father did not appear in person but his counsel appeared on his behalf. On May 7, Father, through his counsel, filed a form request to change court order pursuant to section 388. Attached were declarations from Father and his counsel. Line 5.d. of the form request asked for information about "Child's Indian tribe *(if applicable and known)*." The response given by Father on the form was "none known." The juvenile court granted the request in part by finding Father to be J.T.'s presumed father.

In June 2014, Father's counsel declared Father no longer wished to pursue reunification services and asked to withdraw his request to change a court order. The juvenile court granted the request.

In an order issued on June 11, 2014, the juvenile court terminated parental rights as to both Mother and Father, found J.T. to be adoptable, and found adoption and termination of parental rights to be in J.T.'s best interest. Mother timely filed a notice of appeal from the order terminating parental rights. Father did not appeal.

### III. Discussion

Mother argues the order terminating parental rights must be reversed because the juvenile court did not satisfy the ICWA requirement of inquiring into whether Father has Indian ancestry. On appeal, Mother may assert noncompliance with

4

ICWA even though she is not of Indian ancestry and did not raise the ICWA issue in the juvenile court. (*In re B.R.* (2009) 176 Cal.App.4th 773, 779-780.)

"Welfare and Institutions Code section 224.3, subdivision (a), and California Rules of Court, rule 5.481(a), impose upon both the juvenile court and SSA 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child. The social worker must ask the parents if the child has Indian heritage (Cal. Rules of Court, rule 5.481(a)(1)), and upon a parent's first appearance in a dependency proceeding, the juvenile court must order the parent to complete a Parental Notification of Indian Status form (Cal. Rules of Court, rule 5.481(a)(2))." (*In re N.E.* (2008) 160 Cal.App.4th 766, 769, fn. omitted.)

The record in this case includes no evidence showing that the social worker asked Father whether he had any Indian ancestry or that the juvenile court ordered Father to complete a Parental Notification of Indian Status form. But, "[e]ven if the juvenile court and SSA failed in their inquiry responsibilities, we cannot disturb the juvenile court's order without a showing [Mother] was prejudiced by the claimed error." (*In re N.E.*, *supra*, 160 Cal.App.4th at p. 769.)

Mother suffered no prejudice. Father was not located until he contacted the social worker on March 25, 2014. Soon thereafter, on May 7, Father filed his request to change a court order pursuant to section 388. Line 5.d. of the form request asked for information about "Child's Indian tribe *(if applicable and known)*." Father's response, "none known," was tantamount to checking the box next to "I have no Indian ancestry as far as I know" on a Parental Notification of Indian Status form.

Notice under ICWA need not be given if there is insufficient reason to believe a child is an Indian child. (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538.) Father represented that J.T. had no known Indian ancestry. Mother told the social worker she had no Indian ancestry. No other circumstances were present that would give probable cause for SSA or the juvenile court to believe J.T. had Indian ancestry. (See *id.*

5

at pp. 1537-1538.) Since the record does not disclose that Mother suffered prejudice from any failure to comply with ICWA, we must affirm. (*In re N.E.*, *supra*, 160 Cal.App.4th at p. 771.)

SSA has requested we take judicial notice of two documents filed after the order terminating parental rights: (1) the juvenile court's minute order dated August 13, 2014, and (2) SSA's interim review report dated August 13, 2014 and filed on August 11, 2014. In the alternative, SSA requests we consider these documents as additional evidence under Code of Civil Procedure section 909. SSA argues this evidence renders the appeal moot because the interim review report, which the juvenile court received in evidence on August 13, stated that "[o]n August 8, 2014, the child's father denied any American Indian Heritage." In light of our conclusion that any ICWA error was harmless, we deny SSA's request for judicial notice or to consider additional evidence.

## IV. Disposition

The order terminating parental rights is affirmed.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

6